UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**CHRISTOPHER DANIEL BROWN**,

                Plaintiff,

v.                                           **Case No. 15-cv-238-pp**

**KEITH RADAR,
ALEXANDRIA COBB,
LORI JOHNSON,
SAINT LUKE'S SOUTH SHORE HOSPITAL, and
JANE/JOHN DOE,**

                Defendants.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 8), AND SCREENING PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 7)**

---

The plaintiff, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights while he received medical treatment at St. Luke's South Shore Hospital following his arrest. Dkt. No. 1. He amended that complaint on June 4, 2015. Dkt. No. 7. This order resolves the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) and his motion to appoint counsel (Dkt. No. 8), and screens the amended complaint (Dkt. No. 7).

I.    <u>**Plaintiff's Motion for Leave to Proceed In Forma Pauperis (Dkt. No. 2)**</u>

The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That

1

law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 4, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $20.59. Dkt. No. 4. The plaintiff paid that amount on March 23, 2015. The court will grant the plaintiff's motion for leave to proceed *in forma pauperis*, and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.     Review of the Amended Complaint (Dkt. No. 7)

### A.     *Standard for Screening Complaint*

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v.

2

Williams, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

3

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B. *Allegations in the Amended Complaint*

Following his arrest on May 26, 2014, City of Cudahy police officers transported the plaintiff to Saint Luke's South Shore Hospital. Dkt. No. 7 at 2. After he was admitted, police officers handcuffed the plaintiff to the emergency room bed and restrained the plaintiff's legs. According to the plaintiff, defendants Dr. Keith Radar and Nurse Lori Johnson confronted him, and he told them that he refused any blood draws and that they would need a warrant

4

to take his blood. Dr. Radar ordered the blood tests over the plaintiff's protests. Nurse Johnson asked the plaintiff what was wrong, and the plaintiff told her that the cops were "f---ing with [him]." Id. Dr. Radar and Nurse Johnson then left the plaintiff alone and unsupervised with several police officers. Id.

A short time later, defendant emergency medical technician Alexandra Cobb entered the room to do a blood draw. Id. As she approached the plaintiff with a needle, he twice refused to allow a blood draw, but she continued to approach him with the needle. Cobb then said that the plaintiff spit on her clothes, and she left the room to change. After Cobb left, an officer placed a pillow over the plaintiff's face. While other officers held the plaintiff down on the bed, the first officer put a spit mask over his face. Id. Cobb returned, and the officers pinned the plaintiff to the bed while she took his blood. Id. at 3. Dr. Radar then sedated the plaintiff, with the permission and consent of the police officers. Id.

Shortly after this incident, Cobb gave a statement to the police about what occurred during the plaintiff's private medical procedure. She also testified in court about the same incident in September 2014, without the plaintiff's consent or permission. Id.

The plaintiff alleges that the defendants violated his Eighth Amendment rights, and his rights under the Health Insurance Portability and Accountability Act (HIPAA). Id. He also alleges that Dr. Radar and Nurse Johnson failed to properly supervise Cobb and that she was not properly trained because she did a medical procedure without the plaintiff's consent. Id.

5

The plaintiff further alleges that the hospital staff failed to properly supervise the police officers in the hospital, which led to the plaintiff being physically assaulted, and that the hospital staff failed to properly question the officers about why they brought the plaintiff to the hospital and what led to the situation so they could properly evaluate the situation before attempting medical procedures. Id.

Finally, the plaintiff submits that Cobb was not properly trained and supervised regarding patient confidentiality, because she made a police report about the plaintiff's medical procedure and testified about it in court without the plaintiff's consent or a subpoena. Id.

C. *Analysis*

As an initial matter, the court notes that "[w]hen a plaintiff brings a section 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private entity acted under the color of state law." Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 822 (7th Cir. 2009). "This requirement is an important statutory element because it sets the line of demarcation between those matters that are properly federal and those matters that must be left to the remedies of state tort law." Id. at 822-23. "[T]he Supreme Court wrote that '[t]he ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights "fairly attributable to the State?"'" Id. at 823 (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)). The Supreme Court has set out several tests

6

to help courts evaluate whether a particular circumstance constitutes state action, including the "symbiotic relationship test, the state command and encouragement test, the joint participation doctrine, and the public function test." Rodriguez, 577 F.3d at 823-24.

These tests require the court to consider factors such as whether the doctor was employed by the state to provide medical services to inmates, id. at 824; whether the doctor had a particular function within the state system, id.; whether there was a government law or regulation that fostered or encouraged the alleged unconstitutional action, id. at 823-24 n.9 (citing Moose Lodge No. 107 v. Irvis, 407 U.S.163, 176-77 (1972)); whether the private entity conspired with a public actor to commit the constitutional violation, id. at 824 n.10 (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982)); and whether the private entity's actions was "traditionally the exclusive prerogative of the State," id. at n.11 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 353 (1974)). While the court does not have enough information to answer most of these questions, it does appear that the plaintiff is alleging that the defendants were conspiring with the police officers to violate his rights. Thus, the court will assume for the purposes of screening that there was state action, and will consider his claims.

The plaintiff does not have any Eighth Amendment claims against the defendants, because at the time of the events he describes in the complaint, he had not been charged with or convicted of an offense. See Lopez v. City of Chicago, 464 F.3d 711, 719 (7th Cir. 2006) ("[T]he protections of the Fourth

7

Amendment apply at arrest and through the *Gerstein* probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction."). The court will not allow the plaintiff to proceed on any Eighth Amendment claims.

A blood draw is a search of a person that is limited by the Fourth Amendment. Missouri v. McNeely, ___ U.S. ___, 133 S. Ct. 1552, 1558 (2013). "Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" Id. (quoting Winston v. Lee, 470 U.S. 753, 760 (1985)). A warrantless search is reasonable only if it falls within a recognized exception. McNeely, 133 S. Ct. at 1558. "[W]hile the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case . . . it does not do so categorically. Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." Id. at 1563; see also Gerhartz v. Richert, 779 F.3d 682, 684-85 (7th Cir. 2015) (the natural dissipation of alcohol from a person's bloodstream, without more, does not constitute a *per se* exigency sufficient to justify a warrantless blood draw).

The complaint does not contain details regarding why the plaintiff was arrested or why police officers and medical professionals sought to draw his blood. Nevertheless, the plaintiff emphatically denies giving consent for a blood draw. The court will allow the plaintiff to proceed on Fourth Amendment claims

8

against Dr. Radar and Nurse Johnson, who the plaintiff alleges participated in the decision to draw the plaintiff's blood, and Cobb, who drew the blood.

The court will not allow the plaintiff to proceed on his claims that Dr. Radar and Nurse Johnson failed to supervise Cobb; there is no supervisory liability under §1983. See Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009) (State actors are "responsible for their own misdeeds but not for anyone else's."). Likewise, the defendants at the hospital did not have a duty to supervise the police officers who had custody of the plaintiff at the hospital. Id. ("[O]ne distinctive feature of this nation's tort law is that there is no general duty of rescue.").

Nor will the court allow the plaintiff to proceed on his claims regarding violations of his patient confidentiality. "[The Health Insurance Portability and Accountability Act] HIPAA does not furnish a private right of action." Carpenter v. Phillips, 419 F. App'x 658, 659 (7th Cir. 2011) (collecting cases). Some circuits have recognized a privacy right for prisoners in their medical information, but those cases have "involved the purposeful dissemination of intensely private medical information," such as HIV-positive status. Franklin v. McCaughtry, 110 F. App'x 715, 718-19 (7th Cir. 2004) (refusing to recognize such a privacy right, but noting decisions to the contrary in regard to HIV status in Doe v. Delie, 257 F.3d 309, 311 (3d Cir. 2001) and Powell v. Schriver, 175 F.3d 107, 109 (2d Cir. 1999)). In Franklin, the Seventh Circuit noted that prisoners "at best have very limited privacy rights" and "cannot enjoy greater privacy protection than individuals in free society." Id. at 718-19.  The Court

9

also noted that "some amount of sharing of medical information in areas where it might be overheard by other patients—e.g., in hospital emergency rooms, school infirmaries, and the waiting room of a doctor's office—is commonplace . . . ." Id.

In addition, the plaintiff does not make clear what defendant Cobb said in either the police report or the court hearing. A review of the docket from the plaintiff's criminal case reveals that he was convicted of throwing or discharging bodily fluid at a public safety worker; presumably, these charges arose out of Cobb's allegation that the plaintiff spit on her. (State v. Brown, Case No. 2014CF002230, available at https:///wcca.wicourts.gov). The facts in the complaint do not allow the court to determine whether Cobb said anything more about what happened that day at the hospital than that the plaintiff spit on her. For these reasons, the court will not allow the plaintiff to proceed on any privacy rights claims.

Finally, the plaintiff names St. Luke's South Shore Hospital as a defendant, but the complaint does not describe any specific actions that the hospital took to violate his rights. He refers collectively to "hospital staff," but that is not enough to state a claim against the hospital as a whole. The plaintiff also listed defendants "John Doe" and "Jane Doe," but the amended complaint does not include any allegations of personal involvement by any unnamed individual employees of the hospital. The court will dismiss as defendants St. Luke's South Shore Hospital, John Doe, and Jane Doe.

10

### III. <u>Motion to Appoint Counsel</u>

The plaintiff has filed a motion asking the court to appoint an attorney to represent him. Dkt. No. 8. The motion states that the allegations in his complaint are complex, that he has only basic knowledge of federal law and HIPPA rights, and that he does not have the ability to take depositions. He states that he sent letters to twelve lawyers, asking them to represent him. He states that he received only two responses, and those two indicated that they could not represent him. The rest did not respond. <u>Id.</u>

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. <u>Navejar v. Iyola</u>, 718 F.3d 692, 696 (7th Cir. 2013); <u>Ray v. Wexford Health Sources, Inc.</u>, 706 F.3d 864, 866-67 (7th Cir. 2013). First, the person has to make a reasonable effort to hire private counsel on their own. <u>Pruitt v. Mote</u>, 503 F.3d 647, 653 (7th Cir. 2007). After a plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." <u>Navejar</u>, 718 F.3d at 696 (citing <u>Pruitt</u>, 503 F.3d at 655). To decide that, the court looks, not only at a plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." <u>Id.</u>

The plaintiff states that he wrote to twelve lawyers asking them to take his case, and that two responded that they would not represent him. Dkt. No. 8. But the plaintiff does not provide information to support these statements

11

(such as the names of the attorneys, the dates he sent the letters, or who wrote back refusing to represent him). The plaintiff will need to provide the names of at least three attorneys he has tried to contact before the court can conclude that he has made a "reasonable attempt" to hire counsel on his own.

The court also notes that, at this stage, even if the plaintiff had provided proof that he'd contacted at least three attorneys, the court would not appoint counsel. The court does not agree with the plaintiff that his claims are complex, and he has done a good job thus far of explaining the facts and his legal theories for why those facts demonstrate constitutional violations. The plaintiff's amended complaint is articulate, detailed and organized, and it is sufficient—at this point in the case—to allow the court and the defendants to understand his claims. The court will deny the plaintiff's request for appointment of counsel without prejudice; he may renew it at a later date if he provides proof that he has contacted attorneys and demonstrates that the case has become too complex for him to handle himself.

**IV.  Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2).

The court **DISMISSES** the following defendants: Saint Luke's South Shore Hospital, John Doe and Jane Doe.

The court **ALLOWS** the plaintiff to proceed on Fourth Amendment claims only against defendants Radar, Cobb, and Johnson.

12

The court **ORDERS** that the United States Marshal shall serve a copy of the complaint and this order upon the following defendants pursuant to Federal Rule of Civil Procedure 4: Keith Radar, Alexandria Cobb, and Lori Johnson. The court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

The court further **ORDERS** the defendants to file a responsive pleading to the complaint.

The court further **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff's prison trust account the $329.41 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall clearly identify the payments by the case name and number.

The court further **ORDERS** the plaintiff to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. Because each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff also should retain a personal copy of each document filed with the court.

In addition, the parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send a copy of this order to the warden of the institution where the inmate is confined.

Dated at Milwaukee this 2nd day of October, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge